Wilton E. **HEYLIGER**, Plaintiff–Appellant,

v.

**STATE UNIVERSITY AND COMMUNITY COLLEGE SYSTEM OF TENNESSEE, Allen Spritzer and John Smith,** Defendants–Appellees.

No. 96–5307.

United States Court of Appeals, Sixth Circuit.

Argued March 18, 1997.

Decided Oct. 3, 1997.

Robert Jan Jennings (argued and briefed), Branstetter, Kilgore, Stranch & Jennings, Nashville, TN, for Plaintiff–Appellant.

S. Elizabeth Martin (argued and briefed), Office of the Attorney General, Civil Litiga-

tion & State Services Division, Nashville, TN, for Defendants–Appellees.

Before: MERRITT, KRUPANSKY, and BOGGS, Circuit Judges.

## OPINION

BOGGS, Circuit Judge.

Wilton E. Heyliger appeals the district court's dismissal, as "res judicata," of his complaint alleging employment discrimination in violation of Title VII, 42 U.S.C. ¶ 2000e *et seq.* For reasons somewhat different from those relied on below, we find that Heyliger's Title VII claim was barred by the doctrine of claim preclusion, and thus affirm the judgment of the district court.

## I

According to his affidavit, Heyliger, a black male, is a native of the former British Guiana who immigrated to the United States in 1967, attended Howard University, obtained a doctorate in economics from Indiana University, and became an American citizen in 1986. In 1988, East Tennessee State University ("ETSU"), a unit of defendant State University and Community College System of Tennessee, recruited Heyliger to join ETSU's Economics and Finance faculty as an associate professor, a tenure-track position. Apart from his teaching duties, Heyliger served on two faculty committees, one pertaining to race relations on campus, the other a search committee for a new chair of his department. Heyliger expressed the view that the search procedures and job qualifications adopted by the committee discriminated against applicants by reason of their race, age, and national origin. Consequently, he claimed, the committee rejected a highly-qualified candidate who was a native of India. Heyliger then protested the eventual selection of defendant Jon Smith, a former member of the search committee, who, Heyliger claimed, did not meet the committee's own criteria. Smith—Heyliger's new boss—soon recommended that Heyliger's contract not be renewed at the end of the 1990–91 academic year. Smith justified his recommendation by stating that Heyliger was incompetent, had sexually harassed a

number of female students, and had committed plagiarism, charges which Heyliger denied. Defendant Allen Spritzer, dean of the College of Business, adopted Smith's recommendation. Heyliger was informed in May 1990 that his contract would not be renewed upon its expiration in July 1991.

Heyliger filed a complaint with the EEOC in September 1990, alleging violations of Title VII. On December 5, 1990, he filed a complaint in state court, alleging violations of the Tennessee Human Rights Act, T.C.A. § 4–21–101 *et seq.* Almost three years later, on November 19, 1993, the chancery court granted the defendants' motion for summary judgment. On July 27, 1994, the Tennessee court of appeals affirmed that decision. On January 30, 1995, the Tennessee Supreme Court denied permission to appeal in a brief order headed "Concurring in Results Only."

Meanwhile, on January 12, 1994, some two months after Heyliger's loss in chancery court, Heyliger received from the EEOC a notice of right to sue. Heyliger filed a complaint in federal district court on April 13, 1994, seeking, among other things, actual and punitive damages, and either reinstatement to his position or front pay. The court referred the case to a magistrate judge, who issued a report and recommendation on September 20, 1995, recommending that the defendants' motion to dismiss or for summary judgment be granted on res judicata or collateral estoppel grounds. Heyliger filed objections. The district court adopted the report and recommendation, and dismissed the case on February 8, 1996. Heyliger timely appealed.

## II

This court reviews de novo a district court's decision with regard to issue preclusion (collateral estoppel) or claim preclusion (res judicata in its narrow sense). *See Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 582 (6th Cir.1994). When considering whether the judgment of a state court will have either type of preclusive effect on a subsequent action brought in federal court, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to

give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment. *See Migra v. Warren City School Dist.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen v. McCurry;* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). This requirement does not apply, however, where the statute creating the federal cause of action eliminates, for such claims, the strictures of the Full Faith and Credit Act. In the language of the cases, the statute must contain "an express or implied partial repeal" of § 1738. *Matsushita Elec. Indus. Co., Ltd. v. Epstein,* —— U.S. ——, ——, 116 S.Ct. 873, 881, 134 L.Ed.2d 6 (1996); *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 386, 105 S.Ct. 1327, 1334–35, 84 L.Ed.2d 274 (1985). The Supreme Court held in *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 470–72, 102 S.Ct. 1883, 1891–93, 72 L.Ed.2d 262 (1982), that Title VII contains no such repeal. Consequently, Heyliger's federal suit is subject to whatever preclusive effect the state court judgments would have under Tennessee law.

Before beginning that analysis, it might be useful, in view of the perennial confusion over the vocabulary and concepts of the law of preclusion, to restate the following exposition:

 The Supreme Court has noted:

[t]he preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) (citations omitted). Some commentators and court decisions have used the term "res judicata" as being "virtually synonymous with 'claim preclusion.'" *Ibid.*

In the proceedings attendant to these appeals, the parties and the district court appear to have adopted the position that "res judicata" is synonymous with "claim preclusion" and "collateral estoppel" is synonymous with "issue preclusion." At this stage of the litigation, we will not disturb this usage although we will, during the course of our discussion of the legal issues, use the terms "claim preclusion" and "issue preclusion." We also express our hope that future litigants, in the interests of precision and clarity, will formulate arguments which refer solely to issue or claim preclusion and which refrain from using the predecessors of those terms, whose meanings have become so convoluted.

*Barnes v. McDowell,* 848 F.2d 725, 728 n. 5 (6th Cir.1988).

The hope we expressed in *Barnes* was not realized in the arguments of the present parties, nor in the decision of the district court. We can only express the hope again.

1. *Issue Preclusion*

 In Tennessee,

Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.... To sustain a plea of collateral estoppel it must be shown, inter alia, that the issue sought to be concluded not only was litigated in the prior suit but was *necessary to the judgment* in that suit. 22 Tenn. Jurisprudence, pp. 111–12.

*Massengill v. Scott,* 738 S.W.2d 629, 632 (Tenn.1987) (emphasis added).

The chancery court recited the university's allegation of plagiarism, and noted with a

tone of skepticism that Heyliger contested the allegations, but did not explicitly make a finding on that issue. Nor did the chancellor hold that ETSU did not renew Heyliger's contract in retaliation for criticizing its recruiting practices. The chancellor simply held that, by alleging retaliation, Heyliger did not state a cause of action under § 4–21–401(a) of the Tennessee Code. The chancellor granted the defendants' motion for summary judgment.

The Tennessee Court of Appeals affirmed the decision of the chancery court. Unlike the trial court, the court of appeals considered the possible application of § 4–21–301 (which does bar retaliation), but held that Heyliger had failed to state a claim under that section, because he had sued the individual defendants only in their official capacities, whereas the statute allows a suit for retaliation to be brought only against persons in their individual capacities. As for the § 401 claim, the court of appeals affirmed, stating:

> The chancellor reasoned that the plaintiff could not proceed with his claim of retaliation under § 4–21–401(a) because the statute offers no protection against termination for protesting actions perceived as discriminatory towards unspecified individuals as a class. We agree. The statute proscribes the failure to hire because of race ... or national origin; it provides a claim only for discrimination against the employee. It does not provide a basis of relief for one who unsuccessfully protests alleged discrimination against unnamed persons.

The court went on to state that:

> there is no factual dispute respecting one of the reasons given for the non-renewal of the plaintiff's contract.

> Plagiarism.

> Under oath, the plaintiff admitted that he copied substantial portions of a report.... We think that this admitted fact, standing alone, justified the refusal of the University to renew the plaintiff's contract.

■ It does not matter at all for our purposes that Heyliger had, in fact, disputed in detail the allegation of plagiarism; that

Smith conceded in a deposition that Heyliger, in the private consulting report alleged to be plagiaristic, acknowledged the source on which he drew; that the University did not follow its normal procedures for investigating such a charge; in short, it is not important here that there existed, it appears to us, "a genuine issue as to a material fact" regarding the plagiarism allegation sufficient to defeat a motion for summary judgment under TENN. R. CIV. PROC. 56.03. So long as a state proceeding meets minimal standards of due process, *see Kremer* at 482–83, even an obviously erroneous judgment, as this one may have been, will have preclusive effect. *See Allen*, 449 U.S. at 101, 101 S.Ct. at 418; *Osborn v. Ashland County Bd. Of Alcohol, Drug Addiction, and Mental Health Servs.*, 979 F.2d 1131, 1134 (6th Cir.1992).

■ What *is* significant is that the issue of plagiarism was not "necessary to the judgment" in the state lawsuit, as required for issue preclusion under the law of Tennessee. *See Dickerson v. Godfrey*, 825 S.W.2d 692, 695 (Tenn.1992) ("The doctrine does not apply unless the determination of the issue in the prior suit was necessary to the decision."); *Massengill*, 738 S.W.2d at 632; *cf. Barnes*, 848 F.2d at 730–31 (under Kentucky law, issue preclusion does not bar matters that were immaterial or unessential to determination of the prior action). The rule, apparently consistent with that applicable in Tennessee, is set forth as follows in the RESTATEMENT (SECOND) OF JUDGMENTS § 27: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." As the commentary to that rule explains,

> [i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in provid-

ing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

*Id.,* comment h.

The holding by the Tennessee court of appeals that Heyliger could not state a claim under the Human Rights Act was enough to dispose of Heyliger's case. Thus, the additional holding, that Heyliger's copying of another consultant's report justified the non-renewal of his contract, was, so far as preclusion goes, merely *obiter dictum,* and the court of appeals's determination of plagiarism cannot be regarded as a settled issue that would, by providing a legitimate, non-discriminatory reason for Heyliger's dismissal, defeat his Title VII claim.

### 2. *Claim Preclusion*

This court observed in *Whitfield v. City of Knoxville,* 756 F.2d 455, 459–60 (6th Cir. 1985) that:

[t]he Tennessee courts have held that if a second lawsuit involves the same parties acting in the same capacities and touches the same subject matter as the first lawsuit, then the principles of res judicata apply. *National Cordova Corp. v. City of Memphis,* 214 Tenn. 371, 380 S.W.2d 793, 798 (1964); *Grange Mutual Casualty Co. v. Walker,* 652 S.W.2d 908, 909–10 (Tenn. App.1983).... Thus, the doctrine of res judicata bars consideration of all claims that were *or reasonably could have been litigated* ... in the state court action. *American National Bank & Trust Co. v. Clark,* 586 S.W.2d 825, 826 (Tenn.1979); *National Cordova Corp.,* 380 S.W.2d at 798; *Gibson Lumber Co. v. Neely Coble Co., Inc.,* 651 S.W.2d 232, 234 (Tenn.App. 1983).

In other words, Tennessee does not allow a plaintiff to split a cause of action, in agreement with the rule also set forth in

the RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) as follows:

When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

Heyliger's lawsuits under the Tennessee Human Rights Act and Title VII certainly arose out of the same transaction. And the decisions of the Tennessee courts resulted in a valid and final judgment on the merits of the state-law claims.

Heyliger argues that this aspect of claim preclusion does not bar him from bringing a subsequent action, because two obstacles kept him from bringing his Title VII suit in state court. First, he avers that federal courts have exclusive jurisdiction over Title VII claims; but this ignores the Supreme Court's determination, in *Yellow Freight Sys., Inc. v. Donnelly,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), that state courts have concurrent jurisdiction over Title VII claims.[1] Heyliger's theory of exclusive federal jurisdiction (shared, prior to *Donnelly,* by the EEOC and the Third, Ninth, Tenth, and Eleventh Circuits, *id.* at 822 n. 2, 110 S.Ct. at 1568 n. 2) offers his federal lawsuit no protection against the rule found in RESTATEMENT (SECOND) OF JUDGMENTS § 25, Comment e:

When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground.

A bit more promisingly, Heyliger also argues that he could not, in any event, have filed a Title VII action until he received a

---

1. It was suggested at oral argument that Tennessee courts will not entertain claims brought under Title VII. We have found no authority for this proposition, and *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26 (Tenn.1996), in which the plaintiff brought claims in chancery court under

both the Tennessee Human Rights Act and Title VII, furnishes an example to the contrary. We note that the Tennessee Supreme Court has held that the courts of that state have jurisdiction to entertain suits brought under 42 U.S.C. § 1983. *See Poling v. Goins,* 713 S.W.2d 305 (Tenn.1986).

right-to-sue letter from the EEOC, at which point the chancery court had already issued its judgment. As support for this theory, Heyliger relies on *Whitfield*, in which this court addressed similar, but not identical, circumstances. There, plaintiff Paris D. Goin filed an age-discrimination complaint under state law in Tennessee chancery court on December 23, 1982. The court entered final judgment against the plaintiff on February 8, 1983, only about forty-five days later. Goin then filed an ADEA complaint with the EEOC, and subsequently brought suit in district court. Defendants asserted res judicata. This court stated:

In order to determine whether Goin could have raised the federal claim in the Knox County Chancery Court action, we first examine the language of ADEA. Title 29 U.S.C. § 626(d) provides that a private plaintiff such as Goin may not commence a § 626 age discrimination action until sixty days after the plaintiff has filed a charge with the EEOC. Moreover, where a state agency exists that may grant or seek relief from discriminatory practices, a private plaintiff may not commence a § 626 age discrimination action until sixty days after state administrative proceedings have commenced. 29 U.S.C. § 633(b); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 753–58, 99 S.Ct. 2066, 2070–72, 60 L.Ed.2d 609 (1979). Tennessee has created such an agency. *See* Tenn.Code Ann. §§ 4–21–103 & 4–21–104. Although a plaintiff need not wait longer than sixty days for a state agency to act, *Evans*, 441 U.S. at 761, 99 S.Ct. at 2074, a plaintiff must commence state proceedings and wait sixty days before filing an ADEA action.

In the present case, Mayor Tyree ordered Goin's involuntary retirement on December 16, 1982. The Chancery Court entered final judgment in favor of the City on February 8, 1983. Had Goin filed a charge with the EEOC and commenced state administrative proceedings on the same day that the Mayor ordered his involuntary retirement, sixty days still would not have elapsed before the Chancery Court entered final judgment. Thus, even had Goin wished to assert the ADEA claim during the pendency of the Chancery Court action, he could not have done so because of 29 U.S.C. § 626(d) and § 633(b). Since the ADEA claim could not have been raised in the Chancery Court action under the facts of this case, Goin's federal claim is not barred by principles of res judicata.

756 F.2d at 460.

However, the court stated in a footnote:

We do not address the question of whether Goin would have been required to amend his state court complaint in order to assert the ADEA claim had the Chancery Court action remained pending for more than sixty days after timely filing of charges with the EEOC and timely commencement of state administrative proceedings.

*Ibid* n. 7.

Here, the significant date was 180 days after the date on which Heyliger filed his complaint with the EEOC, at which point Heyliger could have requested, and been entitled to receive from the Attorney General forthwith, a right-to-sue letter. *See* 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1601.28(a)(1), (d)(2).[2] Unlike the sprinting chancery court in *Whitfield*, here the chancery court did not issue its judgment for almost three years, allowing far more time than necessary for Heyliger to obtain a right-to-sue letter before a judgment of the state court issued. Once that notice was in hand,

2. Tennessee is a "State ... which has a State ... law prohibiting the unlawful employment practice alleged," *see* 42 U.S.C. § 2000e–5(c), and the Tennessee Commission for Human Development is a designated Fair Employment Practices agency, *see* 29 C.F.R. § 1601.74. The record does not show whether Heyliger filed a complaint with the TCHD before filing his complaint with the EEOC. If he filed a complaint with the TCHD at least sixty days prior to filing his EEOC complaint, then he would have been entitled to receive a right-to-sue letter 180 days after filing his EEOC complaint. If he did not file with the TCHD, the EEOC presumably would have filed a complaint with the state agency on his behalf, and waited sixty days before accepting jurisdiction. *See Love v. Pullman*, 477 U.S. 807 (1980). He would have been entitled to receive the right-to-sue letter 180 days after that. Because of the three-year pendency of his case in chancery court, the possible difference of sixty days is immaterial.

Heyliger could have folded his Title VII claim into his action in state court, for, under Tennessee law, "leave [to amend pleadings] shall be freely given when justice so requires." TENN. R. CIV. PROC. 15.0 (Michie 1996); *see, e.g., Blocker v. Dearborn & Ewing,* 851 S.W.2d 825 (Tenn.Ct.App.1992); *Huntington Nat'l Bank v. Hooker,* 840 S.W.2d 916 (Tenn.Ct.App.1991); *see also Hunter v. Sevier,* 15 Tenn. 127 (1834); *cf.* FED R. CIV. PROC. 15(a) (employing language adopted in parallel Tennessee rule).

Assuming that the EEOC and the Tennessee courts, if presented with a request and a motion, would have observed these rules, Heyliger's Title VII claim "reasonably could have been litigated ... in state court," *Whitfield* at 459. Heyliger therefore had an obligation to do so. Tennessee law has imposed on litigants a standard of due or reasonable diligence. *See Hayes v. Civil Serv. Comm'n,* 907 S.W.2d 826, 828 (Tenn.App.1995) ("estoppel of the former judgment is conclusive, not only as to matters actually put in issue, but equally as to those which by due diligence of the litigant ... might have been put in issue and determined") (quoting *National Cordova Corp.,* 380 S.W.2d at 796). Requiring a plaintiff in Heyliger's shoes to seek a right-to-sue letter and to amend his complaint does not exceed the burden of a due diligence standard. *Cf. Herrmann v. Cencom Cable Assoc., Inc.,* 999 F.2d 223, 225–26 (7th Cir. 1993) (requiring claimant, in order to avoid claim preclusion, to seek a right-to-sue letter and join Title VII claim with another, sufficiently related, pending federal action, even though to do so could pretermit EEOC administrative proceedings); *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 40 (2d Cir.1992) (Title VII action precluded where plaintiff could have sought a right-to-sue letter and amended complaint in pre-existing federal lawsuit to include Title VII claim). Not requiring Title VII plaintiffs to comply with this requirement would mean, as Judge Posner observed in *Herrmann,* that "a significant fraction of legally questionable discharges would give rise to two suits," a result that would be "inefficient and ... unduly burdensome to employers and hence indirectly to other workers and to consumers as well as to stockholders...." 999 F.2d at 225.

We hold, therefore, that under Tennessee's law of claim preclusion, the prior adjudication in state court barred Heyliger's action in federal court. Whether the reasoning behind our holding should apply to state suits brought elsewhere in this circuit will depend, under *Kremer,* on the law of claim preclusion in the particular state.

### III

For the foregoing reasons, we AFFIRM the judgment of the district court.