**Mary CHURCHILL**

v.

**STAR ENTERPRISES a/k/a Star Staff Inc., et al.**

**No. CIV. A. 98–1751.**

United States District Court, E.D. Pennsylvania.

June 22, 1998.

Thomas M. Holland, Law Offices of Thomas More Holland, Philadelphia, PA, for Plaintiff.

Gayle A. Stein, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, Irving L. Hurwitz, Carpenter Bennett & Morrissey, Newark, NJ, Jed M. Milstein, Ballard Spahr, Andrews & Ingersoll, Philadelphia, PA, for Star Enterprises.

Irving L. Hurwitz, Carpenter Bennett & Morrissey, Newark, NJ, for Joseph Jantorno, David Smith.

## *MEMORANDUM*

BARTLE, District Judge.

This is an action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, with pendent state law claims. Presently before the court is the motion of defendants to dismiss the complaint and for sanctions. Defendants contend that the action is barred by res judicata, that is, by claim preclusion.

Defendants present their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, any motion under Rule 12(b) must be brought prior to the filing of a responsive pleading. *See* Fed.R.Civ.P. 12(b). Defendants filed and served their answer approximately one month before the instant motion to dismiss. For this reason,

we will treat the motion as one requesting judgment on the pleadings under Rule 12(c).

In ruling on a motion for judgment on the pleadings, the well pleaded facts of the complaint will be taken as true. In addition, we may consider matters of public record, and authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391 (3d Cir.1994); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196–97 (3d Cir. 1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

According to the complaint, filed on April 2, 1998, plaintiff Mary Churchill was a station manager for defendant Star Enterprises, also known as Star Staff Incorporated ("Star"). Individual defendants Joseph Jantorno and David Smith worked as her regional manager and manager, respectively. In June, 1996, plaintiff was diagnosed with oral cancer and underwent three surgeries. From August through October of 1996, plaintiff received radiation treatment, as a result of which she suffered various side effects including fatigue. Plaintiff "requested reasonable accommodation by continually notifying her supervisor, Defendant David Smith [of] her need for staffing assistance in order to modify her work schedule so that she could work less hours." Compl. ¶ 26. Her final request occurred on January 29, 1997, when she left a voice mail message on defendant Smith's answering machine again requesting assistance for staffing her store. This request, as well as all prior requests, went unanswered. Defendant Smith advised defendant Jantorno of plaintiff's requests for assistance. Defendant Jantorno then scheduled an "untimely evaluation" for plaintiff and asked defendant Smith to perform such evaluation. Compl. ¶ 39. Defendants terminated plaintiff on February 7, 1997 "in an effort to avoid the obligation of providing Plaintiff a reasonable accommodation" and for "pretextual reasons." Compl. ¶¶ 31, 41.

Plaintiff claims that her discharge violated the ADA, the Pennsylvania Human Relations Act ("PHRA"), Pa.Stat.Ann. tit. 43, §§ 951 *et seq.* and the New Jersey Family Leave Act ("NJFLA"), N.J.Stat.Ann. §§ 34:11B–1 *et seq.* She seeks reinstatement, compensatory damages, punitive damages, and counsel fees. Defendants argue, on the other hand, that the instant action is barred by claim preclusion because plaintiff could have raised these ADA, PHRA, and NJFLA claims in a prior lawsuit based on these same facts.

On May 20, 1997, over ten months prior to filing the present action ("*Churchill II*"), plaintiff instituted a lawsuit in this court, entitled *Churchill v. Star Enterprises,* 3 F.Supp.2d 622 ("*Churchill I*"), against these same defendants asserting a violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* The complaint in *Churchill I* contended that plaintiff, employed as a station manager for Star since July of 1991, was diagnosed and treated for oral cancer. After three surgeries, due to which she missed two and a half weeks of work, she commenced radiation treatment. On January 29, 1997 plaintiff put defendants on notice that she qualified for FMLA leave due to her "serious medical need." Compl. ¶ 20. However, defendants discharged her on February 6, 1997 "for exercising her rights under the FMLA." Compl. ¶ 23. Plaintiff sought equitable relief of reinstatement and restoration of health benefits, as well as compensatory and punitive damages. She also demanded liquidated damages pursuant to the FMLA, as well as attorneys' fees, expert fees, and costs.

After a Rule 16 status conference on September 11, 1997 in *Churchill I,* this court entered a scheduling order with a December 31, 1997 discovery deadline. It placed the case in the court's February, 1998 trial pool. At trial, which commenced before the undersigned on February 11, the jury found that the defendants terminated plaintiff in violation of the FMLA and awarded damages of $8,609.02. The court then added statutory interest. Finding that the violation of the FMLA had not been made in good faith, we doubled this award as liquidated damages. *See* 29 U.S.C. § 2617(a)(1)(A)(iii). We entered judgment on February 13, 1997 in favor of plaintiff and against all three defendants, Star, Joseph Jantorno, and David

Smith for $18,337.22, jointly and severally. We also ordered defendant Star to reinstate plaintiff to a position equivalent to the one she held as of February 5, 1997, with equivalent wages and benefits. Subsequently, we awarded plaintiff counsel fees and costs. *See Churchill v. Star Enter.*, No. CIV. A. 97-3527, 1998 WL 254080 (E.D.Pa. Apr.17, 1998). As noted above, it was not until April 2, 1998, almost two months after the jury verdict in *Churchill I*, that plaintiff filed *Churchill II*.

■ The primary purpose of claim preclusion is to prohibit piecemeal adjudication of claims arising out of the same transaction or occurrence. *Board of Trustees of Trucking Employees of N.J. Welfare Fund, Inc. Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir.1992). The Court of Appeals has defined claim preclusion as

> giv[ing] dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding. Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action.

*Id.* The first two elements are obviously met here. *Churchill I* resulted in final judgment after trial in favor of the same plaintiff and against the same defendants named in *Churchill II*.

■ In order to determine whether claim preclusion bars the present action, we must decide whether *Churchill II* is based upon the "same cause of action" as *Churchill I*. This third element, however, does not mean that plaintiff must espouse the same legal theory in both lawsuits for claim preclu-

sion to apply. Rather, "[w]hether two lawsuits are based on the identical cause of action 'turn[s] on the essential similarity of the underlying events giving rise to the various legal claims.'" *Id.* (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.1984)). The Court of Appeals has enumerated various factors we must consider. *See Athlone*, 746 F.2d at 984. The "focal points of our analysis are whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same." *Id.*

■ We conclude that *Churchill I* and *Churchill II* involve the same cause of action because the underlying events in both cases are the same.[1] A review of the complaints in both actions reveals that they allege essentially the same facts. Indeed, many paragraphs in the two pleadings are identical. *Compare Churchill I* ¶¶ 2, 3, 4, 7, 9, 11–13, 16–19, 24 *with Churchill II* ¶¶ 4, 7–9, 14–16, 18–21, 23, 33, and 43. Only five factual paragraphs in *Churchill II* were not set forth in *Churchill I*. *See Churchill II* ¶¶ 22, 25, 38–40. Those paragraphs omitted from the *Churchill I* complaint simply reference facts relevant to plaintiff's termination, which were the subject of testimony at the *Churchill I* trial. Both cases challenge the defendants' response to plaintiff's request for leave/accommodation and plaintiff's subsequent termination. The complaints differ in only one major respect. *Churchill I* contends that defendants violated the FMLA when they dismissed plaintiff,[2] while *Churchill II* states that defendants violated the ADA, the PHRA, and the NJFLA.

---

1. Ironically, even plaintiff seems to believe that the ADA, PHRA, and FMLA causes of action are the same. She has filed a partial motion for summary judgment based upon issue preclusion, asking that we find, based upon facts disclosed in *Churchill I*, that she is a qualified individual under the ADA and the PHRA, that she is capable of performing the essential functions of her job with or without reasonable accommodation, and that defendant Star has breached its duty to reasonably accommodate her.

2. Plaintiff's *Churchill I* complaint initially included state law counts for bad faith, wrongful discharge, and a claim of defamation against an additional defendant, Bernadine Lane. However, plaintiff voluntarily dismissed the defamation claim against Ms. Lane on December 19, 1997. Further, plaintiff conceded in her response to defendants' summary judgment motion that the other state law claims were pre-empted by the FMLA. Therefore, we entered judgment in favor of the defendants on those counts on January 27, 1998. Only the FMLA claim proceeded to trial.

Not only are the acts complained of here the same, but the witnesses and documents to be produced at trial would be the same. At the trial of *Churchill I,* the witnesses included the plaintiff, her doctors, employees of defendant with knowledge of plaintiff's illness, and employees of defendant with involvement in plaintiff's termination, including the named individual defendants, as well as Deborah Cox and Walter Schreiber.[3] To prove plaintiff's claim of termination due to disability discrimination, the witnesses would necessarily include these same persons. Simply because the legal theories in the two actions are different is immaterial for purposes of claim preclusion.

 Plaintiff argues that *Churchill II* is not barred because the court could not have had subject matter jurisdiction over the ADA and PHRA claims at the time of *Churchill I.* During the pendency of *Churchill I,* plaintiff maintains that she could not have included her ADA and PHRA claims because she had not yet received her right to sue letter or otherwise completed the administrative process. Plaintiff's right to sue letter is dated April 24, 1998, several months after the judgment was entered in *Churchill I.* Defendants reply that plaintiff could have, and should have, requested the right to sue letter earlier. Further, defendants submit that the Pennsylvania Human Relations Commission ("PHRC"), which investigates PHRA claims, concluded its proceedings in November, 1997. Defendants argue that plaintiff could have moved to amend her *Churchill I* complaint to include the ADA and PHRA claims upon receipt of the right to sue letter and the conclusion of the PHRC proceedings.

A plaintiff, such as Mary Churchill, alleging discrimination in employment must pursue her administrative remedies prior to initiating a court action. Under 42 U.S.C. § 12117, the ADA incorporates the procedures set forth in Title VII:

> In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful

employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed [with the federal Equal Employment Opportunity Commission] under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, ....

42 U.S.C. § 2000e–5(c). Thus, in the Commonwealth of Pennsylvania which maintains its own anti-discrimination laws, Pa.Stat.Ann. tit. 43, §§ 951 *et seq.,* the EEOC must wait 60 days after a filing with the appropriate state agency to begin its own review. If the EEOC has not dismissed the charge or instituted a civil action within 180 days after receipt of the charge, the plaintiff may request, and the EEOC must issue, a right to sue letter. *McNasby v. Crown Cork and Seal Co.,* 888 F.2d 270, 274 n. 3 (3d Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990). Within 90 days after receipt of this letter, the plaintiff must commence judicial action, if he or she desires to do so. *Id.;* 42 U.S.C. § 2000e–5(f)(1).

Pennsylvania similarly requires that a plaintiff resort to its administrative process prior to initiating judicial action. Pa.Stat. Ann. tit. 43, § 962(b). However, once the PHRC dismisses a complaint of discrimination, it must notify the plaintiff, who then "shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act." *Id.* § 962(c).

According to the complaint in *Churchill II,* plaintiff filed her charges with the EEOC and the PHRC in March, 1997. Compl. ¶ 3. In plaintiff's brief in response to the defendants' motion for judgment on the pleadings (incorrectly denominated as a motion to dismiss), she specifies that she filed the charges with both agencies on February 26, 1997. Plaintiff's Brief Contra Defendant's Motion

---

**3.** Plaintiff named Deborah Cox and Walter Schreiber as relevant persons in the *Churchill II* complaint.

to Dismiss Complaint and for Sanctions at 10 n. 12. The PHRC had exclusive review for the first 60 days, or until April 26, 1997. *See* 42 U.S.C. § 2000e–5(c). Afterwards, the EEOC may begin its review. *See Heyliger v. State Univ. and Community College Sys. of Tenn.*, 126 F.3d 849, 855 n. 2 (6th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1054, 140 L.Ed.2d 117 (1998). One hundred and eighty days later, on or about October 27, 1997, plaintiff could have requested and received her right to sue letter from the EEOC. Further, according to plaintiff, the PHRC dismissed her PHRA charge as of November 14, 1997, the date it rendered a dismissal letter. *See* Plaintiff's Brief Contra Defendant's Motion to Dismiss Complaint and for Sanctions at 10 n. 12. As of that date she could have brought suit on the PHRA claims. Thus, over one month remained in the discovery period set by the court in *Churchill I* when plaintiff could have moved to amend her complaint to add both the ADA and PHRA claims.

Under similar circumstances, three Courts of Appeals have held that a plaintiff must request an EEOC right to sue letter in order to protect her claims from the bar of claim preclusion. *Heyliger*, 126 F.3d at 855 n. 2; *Herrmann v. Cencom Cable Assoc. Inc.*, 999 F.2d 223, 225 (7th Cir.1993); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 41 (2d Cir.1992), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993). Once a plaintiff receives the right to sue letter, she may then petition the court to amend her complaint. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "leave shall be freely given when justice so requires." Alternatively, a plaintiff could ask the court to stay the action pending completion of the administrative processes.[4] *Herrmann*, 999 F.2d at 225; *Woods*, 972 F.2d at 41. By choosing either method, the plaintiff preserves her claim. While the plaintiff may incur a delay, she is "accruing

additional entitlements to back pay during this period and will receive prejudgment interest on [her] award when and if [she] does prevail." *Herrmann*, 999 F.2d at 225.

Resolving at the same time all legal theories stemming from the same occurrence promotes judicial economy. Otherwise "a significant fraction of legally questionable discharges would give rise to two suits. This inefficient manner of litigation—inefficient and, we add, unduly burdensome to employers and hence indirectly to other workers and to consumers as well as to stockholders—can be avoided without crippling Title VII's administrative remedies." *Id.*

We agree with the rationale of these cases. Plaintiff could and should have taken steps in *Churchill I* to prevent the bar of claim preclusion. The case could have been tried not only under a FMLA legal theory but also under ADA and PHRA theories. The PHRA claim was ripe for judicial intervention on November 14, 1997. Plaintiff could also have requested a right to sue letter from the EEOC on or about October 27, 1997.[5] Plaintiff could have protected herself by moving for leave to amend her complaint to include these legal theories or at least to stay the action pending administrative review. She did neither.

Plaintiff, in addition, sets forth claims for the first time in *Churchill II* under the NJFLA in Counts V and VI. This statute does not require the exhaustion of administrative remedies prior to this court's exercise of jurisdiction. N.J.Stat.Ann. §§ 34:11B–1 *et seq.* Therefore, these claims also could have been brought in the first action. In fact, plaintiff sets forth no reasons why she failed to do so. Because *Churchill I* resulted in a final judgment on the merits and the two lawsuits involve identical parties and the same cause of action, the NJFLA claims are

---

4. The United States Supreme Court suggested this course of action to avoid the expiration of a statute of limitations. *Johnson v. Railway Express Agency Inc.*, 421 U.S. 454, 465, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The Court held that awaiting a right to sue letter on a Title VII claim did not toll the statute of limitations on a related § 1981 claim. Rather, the § 1981 claim should have been filed within the statute of limitations. *Id.* at 466, 95 S.Ct. 1716. Plaintiff

could then have asked the court to stay the § 1981 action pending the conclusion of EEOC proceedings. *Id.* at 465, 95 S.Ct. 1716.

5. We note that plaintiff requested the right to sue letter issued by the EEOC on April 24, 1998. Obviously her counsel was aware that such letter could be requested and received.

likewise barred under the doctrine of claim preclusion. *Board of Trustees,* 983 F.2d at 504.

Further, Count VII of the complaint requests sanctions against the defendants for failure to follow a February 13, 1998 Order entered by the undersigned in *Churchill I.* Plaintiff contends that defendants failed to satisfy the monetary judgment and to reinstate plaintiff to an equivalent position with complete restoration of benefits. However, defendants attach as an exhibit to their motion a praecipe for satisfaction of judgment, signed by counsel for plaintiff, which acknowledges that the monetary portion has been paid. Further, any failure to comply with the injunctive aspect of this court's order in *Churchill I* can and should be dealt with in that case.

Finally, defendants request sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Under the totality of the circumstances, we decline to award sanctions.

Accordingly, we will grant the motion of the defendants for judgment on the pleadings on the ground of claim preclusion. The motion of defendants for sanctions will be denied.[6]

### ORDER

AND NOW, this 22nd day of June, 1998, for the reasons set forth in the accompanying Memorandum, it is HEREBY ORDERED that:

(1) The motion of defendants for judgment on the pleadings (incorrectly denominated as a motion to dismiss) is GRANTED. Judgment is entered in favor of defendants Star Enterprises a/k/a Star Staff Incorporated, Joseph Jantorno, and David Smith and against plaintiff Mary Churchill; and

(2) The motion of defendants for sanctions is DENIED.

6. Plaintiff had also argued that the instant motion should be ignored because counsel for defendants, while admitted pro hac vice in *Churchill I,* failed to be admitted pro hac vice again for *Churchill II.* This situation has been remedied. Defense counsel moved for pro hac vice admission on June 5, 1998 and we granted the motion on June 9, 1998.