**Michele P. DONALD; and Christina Fielden, Plaintiffs–Appellants,**

v.

**FRUGAL I INC., d/b/a/ McDonald's No. 4770, Defendant–Appellee.**

**No. 02–5058.**

United States Court of Appeals, Sixth Circuit.

Sept. 9, 2003.

Richard J. Braun, Patricia E. Crotwell, Braun & Crotwell, Nashville, TN, for Plaintiff–Appellant.

Lawrence Slade Eastwood, Jr., Baker, Donelson, Bearman & Caldwell, Nashville, TN, for Defendant–Appellee.

Before GUY, SUHRHEINRICH and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Plaintiffs appeal the district court's order dismissing for failure to state a claim upon which relief may be granted their claims of sexual harassment under Title VII. Plaintiffs originally pursued state law sexual harassment claims against the defendant in state court, where each plaintiff accepted an offer of judgment made by the defendant pursuant to Tennessee Rule of Civil Procedure 68. After accepting the defendant's offer, but prior to entry of judgment by the state court, each plaintiff received her Notice of Right to Sue from the EEOC. Because neither plaintiff made any effort to stay the state court action while she waited for her federal rights to accrue, the district court held that claim preclusion barred the plaintiffs from asserting their Title VII rights in federal court. We now AFFIRM.

Plaintiffs Michele Donald and Christina Fielden both worked at McDonald's No. 4770, which is owned and operated by defendant Frugal I Inc. While working at McDonald's, both women were sexually harassed by the same male employee. The plaintiffs' complaints to their managers about the harasser were ignored for some time, until the defendant finally fired the harasser in December 1999.

On September 19, 2000, Donald filed with the EEOC a charge of discrimination against Frugal I, and in December, 2000, she brought suit in Tennessee Chancery Court, alleging violations of the Tennessee Human Rights Act.[1] On April 6, 2001, she filed a motion to set a trial date and the court scheduled a trial for October of that year. At that point, Donald had not yet received her Right to Sue letter from the EEOC, and she wrote the agency to request such a letter–without which she could not bring federal law claims of discrimination against her former employer–on both May 3 and July 31 of 2001. On August 29, 2001, approximately five weeks before the parties were set to go to trial, the defendant made a settlement offer pursuant to Tenn. R. Civ. P. 68.[2] The terms of the offer gave Donald two options: Frugal I would pay her (1) $25,000 for release of all claims, a stipulated dismissal with prejudice, and a promise not to pursue the claims in any other forum; or (2) $23,000 for Frugal to take a public judgment against itself in state court. Donald accepted the $23,000 offer of judgment the next day. On the following day, August 31, 2001, the EEOC issued Donald a Notice of Right to Sue.

---

1. According to Donald, the statute of limitations on her state law claim would have run by December 15 of that year.

2. Tenn. R. Civ. P. 68 is similar to Fed.R.Civ.P. 68: it provides that the defending party may make an offer of settlement, that the offeree has up to ten days to consider the offer, and that an offeree who rejects the offer must pay the offeror's costs if the outcome of the trial places the offeree in a worse position than if she had accepted the offer.

Plaintiff Fielden's situation was similar to Donald's. Fielden filed her charge of discrimination with the EEOC on March 22, 2001. On April 6 of that year, she filed a complaint against defendant in the Tennessee Chancery Court alleging violations of the Tennessee Human Rights Act. and on August 10, she requested that the court set a trial date. On August 29. Frugal I made a Rule 68 settlement offer proposing to give Fielden $7,500 in exchange for release of all claims, or $6,500 in exchange for public judgment against Frugal I. She accepted the $6,500 offer of judgment on August 31. On September 24, 2001, the EEOC issued Fielden a Notice of Right to Sue.

On September 2, upon being informed that the plaintiffs were preparing to file suit in federal court to litigate their Title VII claims, counsel for Frugal I sent a letter to plaintiffs counsel informing her that such a lawsuit would be barred by res judicata unless her clients amended their complaints in the state court actions or moved for a stay of those proceedings pending receipt of both plaintiffs' Right to Sue letters. The plaintiffs were certainly not required to accept the legal analysis offered by the opposing party, but the letter demonstrates that the plaintiffs were on notice that they might not be able to bring their Title VII claims in a subsequent lawsuit.

Although the chancery judge did not enter judgment in the two cases—pursuant to the terms of the Rule 68 settlement agreements—until October 1, neither plaintiff sought a stay of the state court proceedings, nor did she seek to amend her complaint to add her now-ripe federal Title VII claims. Instead, Donald and Fielden waited until the day after the chancery court judge had entered a final judgment in their respective state court actions, and then jointly filed this com-

plaint in federal court seeking compensatory and punitive damages from Frugal I "for unwanted sexual harassment and retaliation suffered by Plaintiffs" in violation of 42 U.S.C. § 2000e *et seq.* (Title VII).

Frugal I moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6), and the district court granted the motion on grounds of claim preclusion. Acknowledging the plaintiffs' exercise of some degree of diligence in attempting to obtain their Right to Sue letters, the district court nonetheless held that they should have asked the state court to stay its entry of judgment so that they could amend their complaints to add their Title VII claims. The court concluded that the plaintiffs had not exercised reasonable diligence, and their claims are therefore barred. Plaintiffs now appeal the dismissal of their federal court action.

We review de novo the dismissal of the plaintiffs' case on claim preclusion grounds. *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031 (6th Cir.1998). "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Heyliger v. State Univ. of Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir.1997). When considering the preclusive effect of a state court judgment, we must "give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment." *Id.* at 851–52. We therefore look to Tennessee law to determine the preclusive effect of the plaintiffs' state court lawsuits on their current claims. Tennessee courts have applied the principles of claim preclusion when "a second lawsuit involves the same parties acting in the same capacities and touches the same subject matter as the first lawsuit," and have therefore disal-

lowed "consideration of all claims that were *or reasonably could have been litigated* . . . in the [first] state court action." *Id.* at 854.

Nonetheless, "[a] prior judgment or decree does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the reexamination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the parties' legal rights and relations." *Lien v. Couch,* 993 S.W.2d 53, 56 (Tenn.Ct.App.1998) (citing *White v. White,* 876 S.W.2d 837, 839–40 (Tenn. 1994), in which the court discussed a change in the facts that subsequently affected the legal rights at issue). In other words, in order to avoid the bar of claim preclusion. "parties [must] raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together." *Id.* A party wishing to bring a second lawsuit based upon a set of facts previously litigated but predicated upon a different legal claim or theory must show that there were "formal barriers" prohibiting her from putting forth the new legal claim in the first lawsuit. *Id.*

In the present case, the dispute between the parties boils down to whether the plaintiffs could and should have litigated their federal claims in the state court action. *See id.; see also Rivers,* 143 F.3d at 1031. In this case, we assume—but do not decide—that the plaintiffs had remedies under Title VII that they could not pursue under state law, so our inquiry becomes whether the plaintiffs' claims are barred by res judicata because they should have been more diligent in attempting to bring their claims together in one forum. *Compare* 42 U.S.C. § 1981a (permitting recovery of punitive damages for Title VII claims in certain circumstances), *with* Tennessee Human Rights Act, Tenn.Code Ann § 4–21–101 *et seq.,* and *Washington v. Robertson County,* 29 S.W.3d 466, 473 (Tenn.2000) (which, when read in conjunction, seem to indicate that punitive damages would not be allowed under state law in these particular cases). The circuits that have addressed the question of whether res judicata bars claimants who had not yet received their Right to Sue letters when their first lawsuits were pending from bringing subsequent lawsuits based upon the same set of operative facts to enforce their Title VII rights have concluded that subsequent lawsuits to enforce Title VII rights are precluded. *See Owens v. Kaiser Foundation Health Plan, Inc.,* 244 F.3d 708, 714–15 (9th Cir.2001) (listing cases, and joining other circuits in barring the second lawsuit because, in Owens's case, the appellants had time to secure their Right to Sue letters during the pendency of the first lawsuit, and could have sought a stay until such letters were received).

In *Heyliger,* the plaintiff filed a complaint with the EEOC, filed a complaint in state court a few months later, and then did not receive his Right to Sue letter for another three years. Two months prior to his receipt of the letter, the Tennessee court granted the defendant's motion for summary judgment. 126 F.3d at 851. We held that the plaintiff's subsequent attempt to bring a Title VII claim after receiving his Right to Sue letter was barred because the plaintiff should have been more diligent in obtaining his Right to Sue letter, seeking a stay of the state court action while awaiting his letter, or both. *Id.* at 856. The plaintiffs in the present case attempt to distinguish *Heyliger* on the grounds that, unlike the plaintiff in *Heyliger,* Donald did all she could to obtain her Right to Sue letter in a timely manner, and Fielden was not entitled to such a letter at the time she accepted the Rule 68 offer because her EEOC claim had not yet been pending for 180 days.

The present case is distinguishable from *Heyliger*, but the distinction is immaterial in this instance. Though we think that the plaintiffs exercised reasonable diligence in trying to obtain their Right to Sue letters, they could and should have made an effort in state court to bring all of their claims in one venue. In fact, they did the opposite: a mere four months after filing her state court complaint, and before receiving her Right to Sue letter, each plaintiff moved to set a date for trial, and neither plaintiff made any effort to add her federal claims once she had received that letter. The plaintiffs have not shown any "formal barriers," *Lien*, 993 S.W.2d at 56, that prevented them from seeking to stay their state court actions and amend their complaints to include their Title VII claims.[3]

The plaintiffs complain that seeking a stay of the state court action would have "impose[d] burdens beyond the requirements of due or reasonable diligence." namely, the burdens of having to choose between litigating their Title VII claims, and accepting the Rule 68 offer (or rejecting it and facing the possibility of paying the defendant's costs if they do not reap from trial a larger judgment than that set forth in the Rule 68 offer). We disagree. Rule 68 is designed to require any plaintiff receiving an offer under its terms to make a difficult choice, and, in any event, it is a legitimate weapon in the litigation arena. Although the operation of the rule may seem harsh in certain circumstances, we are not in the business of saving plaintiffs from making difficult strategic decisions.

Exceptions to the doctrine of claim preclusion should, as a matter of judicial policy, be granted with great caution. As the district court noted, "[r]es judicata is a rigid obstacle to the bringing of future claims based on the same factual circumstances, and the Supreme Court has indicated that there is 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata.*'" (quoting *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). We see no reason to except this case from the application of that salutary principle.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

**3.** The plaintiffs argue that seeking a stay of the proceedings after they had accepted the Rule 68 offers would have been futile because the chancery judge was required at that point to enter judgment on the Rule 68 offers, and had no discretion to stay the proceedings. We need not decide whether this is a correct characterization of Tennessee law, but merely note that had the plaintiffs attempted to amend their complaint, but not been permitted to do so because they had already accepted the Rule 68 offers, the outcome of this case might have been different.