**Debra CULBERSON, et al., Plaintiffs,**

v.

**Vincent DOAN, et al., Defendants.**

**No. C–1–97–965.**

United States District Court,
S.D. Ohio,
Western Division.

Oct. 12, 1999.

Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Cincinnati, OH, for Debra Culberson, Christina Marie Culberson and Roger Culberson, plaintiffs.

Randolph W. Alden, Alden McVay & Durkin, Columbus, OH, for Vincent Doan, defendant.

Paris Kent Ellis, Wall & Ellis, Middletown, OH, for Lawrence Baker, defendant.

Scott J. Frederick, Hamilton, OH, Jeffrey W. Bowling, Brandabur & Bowling Co., LPA, Hamilton, OH, for Tracey Baker, defendant.

Neil Frank Freund, Freund Freeze & Arnold, Dayton, OH, Jerry Doyle Bryant, Bryant & Mattingly, Wilmington, OH, for Richard Payton, defendant.

Lawrence Edward Barbiere, Robert Stanford Hiller, Schroeder Maundrell Barbiere & Powers, Cincinnati, OH, for Village of Blanchester, Ohio, defendant.

Elizabeth A. Billowitz, Foley Hoagn & Elliott, Boston, MA, Julie Goldscheid, Martha Davis, NOW Legal Defense, New York City, for Violence Against Women Act, amicus.

Gerald Francis Kaminski, U.S. Atty., Cincinnati, OH, Marcia K. Sowles, U.S. Dept. of Justice, Civ. Div., Washington, DC, for U.S., intervenor.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment against Defendant Vincent Doan on the Violence Against Women Act Claim (doc. 24); Defendant Vincent Doan's Memorandum in Opposition (doc. 29); and Plaintiffs' Reply (doc. 32).

## BACKGROUND

The Estate of Clarissa Culberson, Clarissa Culberson's parents, Debra and Roger Culberson, and her sister, Christina Culberson (collectively referred to as "Plaintiffs") bring this action pursuant to the

Violence Against Women Act of 1994, Title 42 U.S.C. § 13981, against Vincent Doan ("Defendant"), Lawrence Baker, Tracey Baker, Richard Payton, and the Village of Blanchester ("Blanchester") (collectively referred to as "Defendants") (*see* Complaint ¶¶ 1 and 7–9).

The facts as alleged by Plaintiffs in their Complaint concerning the disappearance and subsequently-ruled death of Clarissa Culberson ("Carrie") are sketchy, yet they tell a grim tale of domestic abuse.

Carrie lived with her mother and sister in Blanchester, Ohio. During 1995, Carrie and Defendant dated on a regular basis. Plaintiffs allege that, in the Fall of 1995, Defendant began to physically abuse Carrie. Plaintiffs contend that on one occasion Defendant "tightly clamped his hand over the nose, mouth and throat of [Carrie], who injured her face trying to pry his fingers off her mouth" (*see* Complaint ¶ 13). Plaintiffs maintain that the abuse continued in 1996, pointing to an incident in which Defendant smashed the windows of Carrie's car as she sat in the vehicle (*Id.* ¶ 14). Although Carrie allegedly reported the incident to the Blanchester police, Plaintiffs assert that no charges were ever filed against Defendant (*Id.*).

Plaintiffs also allege that Defendant subsequently attacked Carrie in April, July, and August of 1996. As a result of the April, 1996 attack, Plaintiffs contend that Defendant caused injuries to Carrie's head and kidneys (*Id.* ¶ 15). Thereafter, Carrie allegedly filed a report with the Blanchester police;. however, the police did not bring any charges against Defendant (*Id.*). On July 5, 1996, Plaintiffs allege that Defendant forced his way into Carrie's home and threatened her in order to prevent Carrie from having any contact with other men (*Id.* ¶ 16). During this incident, Defendant allegedly pushed Plaintiff Debra Culberson in an unsuccessful attempt to assault Carrie (*Id.*). Debra Culberson also filed a criminal report with the Blanchester police department regarding the incident, but asserts that the police did not respond to the report (*Id.*).

On July 28, 1996, Plaintiffs allege that Defendant again attacked Carrie when she came to his house while on an errand (*Id.*). Plaintiffs assert that, during this assault, he threw Carrie across a room and struck her in the head with a metal object, causing her to need surgical staples in her scalp. Carrie again sought criminal charges after this attack through the Blanchester police department (*Id.*). However, according to Plaintiffs, her attempts to get help were again unsuccessful. On August 26, 1996, approximately three days before Defendant allegedly murdered Carrie, Plaintiffs assert that he held her at gunpoint in a barn located within the Blanchester area (*Id.* ¶ 18).

On August 29, 1996, at approximately 12:20 a.m., Defendant's neighbor witnessed him hitting Carrie in the head (*Id.* ¶ 19). At approximately 1:30 a.m., Defendant spoke with Lawrence Baker on the telephone (*Id.*). At 3:15 a.m., Defendant allegedly arrived at Tracey Baker's residence with blood on his chest, arms and pants (*Id.*). He then allegedly took a shower and left the residence with Tracey Baker, who was carrying a handgun and garbage bags. (*Id.*).

At approximately 11:00 a.m., Debra Culberson reported her daughter missing to Blanchester Police Chief Richard Payton ("Chief Payton") (*Id.* ¶ 21). Debra Culberson also reminded Chief Payton at that time of the threats Defendant made to Carrie and the criminal reports filed by Carrie during the preceding weeks. Plaintiffs contend that Chief Payton responded with, "Why does she keep going back to it?" (*Id.*). Plaintiffs assert that Chief Payton did not investigate Defendant, but went instead to Lawrence Baker's home later that day and allegedly warned him that Carrie had been reported missing and that Defendant would be a suspect (*Id.* ¶¶ 23 and 24).

On September 3, 1996, the Blanchester police department performed a search of Lawrence Baker's junk yard (*Id.* ¶ 26). During the search, a blood hound and a

cadaver dog brought a small pond to the attention of the search party indicating that the dogs may have detected Carrie's scent (*Id.*). The search team officers informed Chief Payton that they wanted the pond drained; however, Chief Payton declined to proceed with the search that day and advised everyone to leave the premises (*Id.*). Lawrence Baker was present during the search. When the pond was drained the next day, footprints were visible on the bottom of the pond and a muddy path of weeds led away from the pond (*Id.* ¶ 27).

Carrie's disappearance was ruled a homicide even though her body was never found (*Id.* ¶ 28). Subsequently, Defendant was charged with Carrie's murder. Tracey Baker was charged with obstruction of justice, tampering with evidence, and gross abuse of a corpse. Lawrence Baker was also charged in Carrie's disappearance.

On August 7, 1997, a jury found Defendant guilty of aggravated murder with one capital offense specification, and three counts of kidnaping in the Clinton County Common Pleas Court.[1] He was sentenced to life imprisonment without parole. Tracey Baker's trial began in the Clinton County Court of Common Pleas on May 20, 1998 (*see* doc. 30, Ex. E at 4). On June 4, 1998, a jury found Tracey Baker guilty of two counts of obstruction of justice and one count of tampering with evidence (*Id.*). Tracey Baker was found not guilty of gross abuse of a corpse (*Id.* at 7). The trial of Lawrence Baker began in the Clinton County Court of Common Pleas on August 18, 1998 (*Id.*) On August 25, 1998, the jury returned three not guilty verdicts against Lawrence Baker (*Id.*).

On October 24, 1997, more than a year after Carrie's disappearance, Plaintiffs filed a civil complaint in federal court against Defendants Vincent Doan, Lawrence Baker, Tracey Baker, Richard Payton, and the Village of Blanchester, seeking both monetary and injunctive relief (*see* doc. 1). In their Complaint, Plaintiffs claim that Defendant's actions toward Car-

rie were based primarily on account of her gender in violation of the Violence Against Women Act of 1994, 42 U.S.C. § 13981. Furthermore, Plaintiffs assert that the actions of Defendants Vincent Doan, Lawrence Baker, Tracey Baker, and Police Chief Richard Payton "were willful, wanton, malicious or in reckless disregard or indifference to the safety of Carrie Culberson and to the peace of mind, rights, including rights of familial association of Debra Culberson, Roger Culberson, and Christina Culberson" (*Id.* ¶ 34). Plaintiffs also claim that Defendants violated their civil rights under 42 U.S.C. § 1983, as protected by the Fourteenth Amendment of the Constitution. Additionally, Plaintiffs assert state law claims of emotional distress, wrongful death, obstruction of justice, and conspiracy.

In this action, Plaintiffs seek injunctive relief ordering Defendants to disclose the location of Carrie Culberson's corpse so that she may be given an appropriate burial. In addition, Plaintiffs request compensatory damages, punitive damages, and reasonable attorney fees (*see* doc. 1).

On September 4, 1998, Plaintiffs filed a Motion for Partial Summary Judgment against Defendant Vincent Doan only, alleging that there are no genuine issues as to any material fact and that Plaintiffs are entitled to judgment as a matter of law as to Claim I, violation of the Violence Against Women Act (doc. 24). Defendant subsequently filed a Memorandum in Opposition (doc. 29) and Plaintiffs filed their Reply (doc. 32).

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appro-

---

1. *See State v. Doan,* No. 97–5–077–CR (Clinton Cty. Court of Common Pleas).

priate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir. 1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

### I. *Plaintiffs' Claim Under the Violence Against Women Act of 1994*

The civil provision of the Violence Against Women Act of 1994 (hereinafter the "VAWA" or "the Act"), Pub.L. No. 103–322 §§ 40001–40703, 108 Stat. 1796, 1902–55, provide a claimant with a civil right to be free from crimes of violence motivated by gender and a federal civil rights cause of action for victims of crimes of violence motivated by gender. *See* 42 U.S.C. §§ 13981(a)–(c).[2] In order to establish a cause of action under the VAWA, the claimant must show (1) that she was a victim of a crime of violence and (2) that the crime was motivated based on her gender. 42 U.S.C. § 13981(c). The claimant does not need to show that there has been a prior criminal complaint, prosecution, or conviction against the defendant. 42 U.S.C. § 13981(e)(2).

The Act defines a "crime of violence" as "an act or series of acts that would constitute a felony ... whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," 42 U.S.C. § 13981(d)(2)(A), or acts that would constitute a felony "but for the relationship between" the parties, i.e., marriages in states where laws exist to provide spousal immunity.[3] 42 U.S.C. § 13981(d)(2)(B). Additionally, the Act defines the term "crime

---

**2.** The VAWA provides that "[a]ll persons within the United States shall have the right to be free from crimes of violence motivated by gender." 42 U.S.C. § 13981. Although Congress provided both criminal and civil provisions in the VAWA to address acts of violence against women, for the purposes of the instant matter, all references to the Act are in regards to the civil provisions.

**3.** For instance, the VAWA provides spousal-victims of crimes of violence in states such as Louisiana and Georgia, whose laws prevent victims from bringing tort claims in state court because of inter-spousal tort immunity statutes, the ability to bring claims in federal court and seek damages.

motivated by gender" as being a crime committed by the defendant "because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender...." 42 U.S.C. § 13981(d)(1).

In their Motion for Partial Summary Judgment, Plaintiffs assert that they have "presented evidence that is so compelling that judgment against [D]efendant Doan on the VAWA claim must be granted as a matter of law" (doc. 24). Plaintiffs allege that: (1) the VAWA prohibits gender motivated violence; (2) Defendant committed crimes of violence when he kidnaped and murdered Carrie Culberson; (3) Defendant's crime of violence was motivated by gender; (4) collateral estoppel or issue preclusion can be used offensively to prevent Defendant from relitigating the issue of whether he murdered Carrie Culberson; and (5) Plaintiffs have demonstrated that no reasonable juror could find for Defendant on the VAWA claim. For these reasons, Plaintiffs contend that they are entitled to judgment as a matter of law on Claim I (doc. 24).

Defendant counters that: (1) the VAWA expressly repeals the Full Faith and Credit Act ("FF & CA"), Title 28 U.S.C. § 1738, and, therefore, the district court is not required to give full faith and credit to the state court criminal conviction in this case; (2) Ohio law does not give preclusive effect to the state court criminal conviction in this matter; and (3) there are genuine issues of material fact precluding summary judgment with respect to Plaintiffs' VAWA claim (doc. 29). Defendant also denies that he kidnaped or murdered Carrie Culberson and he contends that he never had any animus towards women. In addition, Defendant alleges that prosecutorial mis-

conduct played a role in his state court conviction (*Id.*).

In Reply, Plaintiffs first insist that Defendant is simply wrong when he asserts that the VAWA expressly or impliedly repealed the FF & CA. Plaintiffs assert that the FF & CA applies to VAWA, as it does to other civil rights statutes. *See Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (holding that 42 U.S.C. § 1983 did not repeal the FF & CA); *Heyliger v. State University & Community College System of Tenn.*, 126 F.3d 849, 852 (6th Cir.1997) (holding that Title VII did not repeal the FF & CA). Therefore, Plaintiffs argue that "the FF & CA applies to VAWA claims and this Court should give full effect to [D]efendant Doan's criminal conviction" (doc. 32).

Secondly, Plaintiffs also contend that Ohio law would permit "offensive estoppel[4] to be used to preclude Defendant from relitigating his guilt in the kidnaping and murder of Carrie Culberson" (*Id.*). Specifically, Plaintiffs cite to cases such as *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 333, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)[5], for the proposition that mutuality of the parties is not required when the estopped party had a full and fair opportunity to litigate the relevant issues (doc. 32). Plaintiffs aver that, although the Ohio Supreme Court has not directly ruled on a civil rights plaintiff's offensive use of collateral estoppel against a criminally convicted defendant, several federal courts have given prior criminal convictions preclusive effect. *See Rourke v. New York State Dept. of Correctional Services*, 915 F.Supp. 525, 537 (N.D.N.Y.1995) (holding that offensive collateral estoppel precluded civil defendants from relitigating issues re-

---

**4.** In this context, "offensive" use of issue preclusion occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party. "Defensive" use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff had previously litigated and lost against another defendant. *See Parklane*

*Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

**5.** In *Parklane*, the court found that the plaintiffs in a later stockbroker class action could use collateral estoppel against the defendant corporation to prevent the defendant from relitigating an issue that was already decided against it in a prior SEC case.

solved against them in a prior state court proceeding because the defendants had a strong motive to litigate, and did litigate with zeal) [6]; *Kowalski v. Gagne*, 914 F.2d 299, 303 (1st Cir.1990) (granting a plaintiff partial summary judgment because the defendant's prior murder conviction collaterally estopped him from denying wrongful death liability in a later wrongful death suit); *United States v. International Bhd. of Teamsters*, 905 F.2d 610, 621 (2d Cir. 1990) (holding that the defendants were collaterally estopped by Ohio convictions from relitigating an issue in a subsequent racketeering case and that offensive collateral estoppel against the convicted defendants were proper since they vigorously litigated their prior criminal convictions).

Nonetheless, upon reviewing the briefs and the evidence submitted by the Parties, we conclude that factual disputes exist in this matter that must be resolved by a jury. Though Plaintiffs present strong and sympathetic arguments in their Motion for Partial Summary Judgment, we conclude for several reasons that Defendant's state court criminal judgment has no preclusive effect in this federal civil action. As noted earlier, summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

### A.  *Full Faith and Credit Act, Title 28 U.S.C. § 1738*

Defendant argues that "the unambiguous and plain meaning of the VAWA contains an express repeal that eliminates the strictures of the Full Faith and Credit Act, at least with respect to prior state, federal, or local criminal proceedings" (doc. 29). Defendant concludes that, without the FF & CA, his criminal conviction in state court has no preclusive effect on this civil action in federal court. However, this Court disagrees with Defendant's reading and interpretation of the VAWA and specifically § 13981(e)(2) of the Act.

The Full Faith and Credit Act, Title 28 U.S.C. § 1738, and the federal common law require a federal court to give the same credit to a state court judgment as the state court would give the judgment. *See, e.g., Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen*, 449 U.S. at 96, 101 S.Ct. 411; *Heyliger*, 126 F.3d at 852. If the FF & CA is expressly or by implication repealed by the federal law creating the cause of action, then the federal court need not give full faith and credit to the state court judgment. *Heyliger*, 126 F.3d at 852.

In *Heyliger*, the plaintiff's teaching contract was not renewed. 126 F.3d at 851. He challenged the non-renewal in state court and lost. *Id.* The plaintiff in *Heyliger* then filed a Title VII claim against his former employer. *Id.* On appeal from the district court's grant of summary judgment for the defendants the Sixth Circuit held that Title VII did not contain an express or implied waiver of the FF & CA. *Heyliger*, 126 F.3d at 852 (citing *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 470–72, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). Therefore, the Sixth Circuit found that Tennessee issue preclusion law applied and it affirmed the district court's grant of summary judgment. *Id.*[7]

Defendant submits that the "unambiguous and plain meaning of the VAWA" expressly repeals the FF & CA, yet Defendant cites no case law to that effect. Moreover, this Court could not find any

---

6.  Note: The Second Circuit Court of Appeals declined to follow the holding of *Rourke* in *Tavora v. New York Mercantile Exch.*, 101 F.3d 907, 909 (2d Cir.1996).

7.  In *Heyliger*, the Sixth Circuit noted that there is "perennial confusion over the vocabulary and concepts of the law of preclusion." *Heyliger*, 126 F.3d at 852. The Sixth Circuit then explained its preference for referring to the two types of preclusive effect of prior litigation as "issue preclusion" and "claim preclusion" rather than "collateral estoppel" and "res judicata." *Id.* This Court will also utilize the terms "issue preclusion" and "claim preclusion in this Order where possible".

such case law supporting an express or implied repeal of the FF & CA by the VAWA. Section 13981(e)(2) of the VAWA states:

(2) No prior criminal action

Nothing in this section requires a prior criminal complaint, prosecution, or conviction to establish the elements of a cause of action under subsection (c) of this section.

This language is not an express or implied repeal of the FF & CA. It merely allows a VAWA claim against a defendant who is not charged with a criminal offense or who is acquitted of a criminal charge. The FF & CA applies to VAWA, as it does to other civil rights statutes. *See, e.g., Allen,* 449 U.S. at 96, 101 S.Ct. 411 (holding that 42 U.S.C. § 1983 did not repeal the FF & CA); *Heyliger,* 126 F.3d at 852 (holding that Title VII did not repeal the FF & CA).

Therefore, Defendant's prior criminal conviction in a state court would ordinarily be entitled to full faith and credit in a federal civil court under Title 28 U.S.C. § 1738. However, this Court must now examine, under Ohio law, what preclusive effect should be given to Defendant's state court conviction. *Migra,* 465 U.S. at 81, 104 S.Ct. 892 (finding that a federal court must give a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered); *see also Heyliger,* 126 F.3d at 852.

### B. *The Doctrine of Issue Preclusion (Collateral Estoppel)*

In *Hicks v. De La Cruz,* 52 Ohio St.2d 71, 74, 369 N.E.2d 776, 777–78 (1977), the Ohio Supreme Court defined the doctrine of issue preclusion as follows:

The modern view of res judicata embraces the doctrine of collateral estoppel, which basically states that if an issue of fact or law is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. A party precluded under this principle from relitigating an issue with an opposing party likewise is precluded from doing so with another person unless he lacked full and fair opportunity to litigate that issue in the first action, or unless the circumstances justify according him an opportunity to relitigate the issue.

*Id.* (quoting Restatement (Second) of Judgments § 68 (1975)).

The Ohio Supreme Court follows the minority rule on issue preclusion and continues to hold that "a judgment can operate as collateral estoppel only where all of the parties to the proceeding in which the judgment is relied upon were bound by the judgment [mutuality requirement]". *Goodson v. McDonough Power Equip., Inc.,* 2 Ohio St.3d 193, 195, 443 N.E.2d 978, 981 (1983); *see also Kelly v. Georgia–Pacific Corp.,* 46 Ohio St.3d 134, 137, 545 N.E.2d 1244, 1248 (1989) ("The essential difference between res judicata and estoppel by judgment is that in the former there must be an exact identity in parties and in cause of action, whereas the doctrine of estoppel by judgment may apply where the cause of action in the subsequent suit is different"); *State v. Crago,* 93 Ohio App.3d 621, 637, 639 N.E.2d 801 (1994) (finding that in order for collateral estoppel to apply, the issues must be identical and the parties or their privies must be the same); *Manley v. Rufus Club Mozambique, Inc.,* 111 Ohio App.3d 260, 263, 675 N.E.2d 1342, 1344 (1996) (holding that the trial court erred in determining that the plaintiff and the State of Ohio were in privity for the purposes of res judicata); *Phillips v. Rayburn,* 113 Ohio App.3d 374, 382, 680 N.E.2d 1279, 1284 (1996) ("In the interest of fairness, however, we feel the defendant to the tort must be afforded an opportunity to present evidence rebutting or explaining the criminal conviction.").

Plaintiffs argue that the Ohio Supreme Court has stated that the mutuality requirement is not absolute and they con-

tend that the Ohio Supreme Court has continued to find exceptions to this requirement when issue preclusion is being used offensively (doc. 32). Plaintiffs cite to several decisions in which Ohio courts have indeed relaxed the mutuality requirement regarding issue preclusion. *See Howell v. Richardson*, 45 Ohio St.3d 365, 368, 544 N.E.2d 878, 881 (1989) ("[W]here a determination is made in an initial action instituted against a tortfeasor relative to his culpable mental state, collateral estoppel precludes relitigation of the determination in a subsequent proceeding brought against his insurer...."); *Hicks*, 52 Ohio St.2d at 75, 369 N.E.2d at 778 (holding that the defendants, who had unsuccessfully argued in a prior case that the hospital was owned and controlled by the state, rather than the city, were collectively estopped from asserting that argument in the instant case); *Fort Frye Teachers Assn. v. State Employment Relations Bd.*, 81 Ohio St.3d 392, 396, 692 N.E.2d 140 (1998) ("In determining whether there is privity of parties, a court must look to the substance of the cause to determine the real parties in interest.") (quoting *Trautwein v. Sorgenfrei*, 58 Ohio St.2d 493, 501, 391 N.E.2d 326, 331 (1979)).

■■■ Nonetheless, these cases are all distinguishable from the case at bar. "Procedural and discovery differences between the criminal and civil forums coupled with a defendant's dilemma over whether to testify in his own behalf or present any defense at the criminal trial make preclusion in this instance a precarious practice and, we believe, unwise practice." *Phillips*, 113 Ohio App.3d at 382, 680 N.E.2d at 1284; *see also Walden v. State*, 47 Ohio St.3d 47, 51–52, 547 N.E.2d 962, 965–67 (1989) (holding that there are several qualitative differences between criminal and civil actions which "militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation"). We agree with Plaintiffs in their general position that the Ohio courts have made exceptions, in the interest of justice and fairness, to the mutuality requirement in regards to issue preclusion. However, we must also note that the mutuality requirement, though weakened with exceptions, has not been expressly overruled by subsequent case law or by statute. Plaintiffs all but concede this point in their briefs, but they also plead with this Court to find in their favor so that "Carrie Culberson's parents and sister should not be forced to relitigate defendant Doan's guilt" (doc. 32).

We initially note that Plaintiffs were not parties to the criminal trial. More importantly, Plaintiffs would not have been bound by a prior judgment if Defendant had been acquitted at the criminal trial. *See Manley*, 111 Ohio App.3d at 263, 675 N.E.2d at 1344 (holding that bar patron, who was shot by bar manager, and the state were not in privity with one another at the previous criminal trial of the manager; and thus manager's acquittal in criminal action was not res judicata in civil suit). An Ohio appeals court faced a similar set of circumstances as the one now before this Court in *Phillips v. Rayburn*. In *Phillips*, an assault victim and his wife filed an intentional tort action after the defendant was convicted of aggravated assault. 113 Ohio App.3d at 376, 680 N.E.2d at 1281. After holding that the trial court conviction did not have collateral estoppel effect in the subsequent tort action, the court noted:

[T]hat appellees were not parties to the criminal trial. More importantly, they would not have been bound by the prior judgment. Thus, had appellant been acquitted at his criminal trial, appellees would still have been free to bring their cause of action. While the Ohio Supreme Court subsequently suggested that the strict mutuality of parties requirement may be relaxed in the interest of justice, see *In re Gilbraith*, (1987) 32 Ohio St.3d 127, 131, 512 N.E.2d 956, 961, we see no reason to so relax the requirement in this case.

*Phillips*, 113 Ohio App.3d at 380, 680 N.E.2d at 1283.

■■■ Accordingly, this Court concludes that factual disputes exist that require a

**874**

jury determination on Claim I. Thus, we hereby DENY Plaintiffs' Motion for Partial Summary Judgment against Defendant Doan on the Violence Against Women Act Claim (doc. 24).

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiffs' Motion for Partial Judgment against Defendant as to Claim I.

SO ORDERED.