**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0544n.06

**Case No. 13-2028**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 22, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BROOKE ELIZABETH HEIKE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CENTRAL MICHIGAN UNIVERSITY BOARD | ) | DISTRICT OF MICHIGAN |
| OF TRUSTEES; CENTRAL MICHIGAN | ) | |
| UNIVERSITY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | O P I N I O N |

BEFORE:     COLE, ROGERS, and ALARCÓN, Circuit Judges.[*]

COLE, Circuit Judge.  Brooke Heike appeals a district court order dismissing her suit against the Central Michigan University Board of Trustees and Central Michigan University (collectively, "CMU") on the basis of claim preclusion.  Heike previously sued CMU and a number of CMU officials under Section 1983, alleging equal protection and due process violations under the Fourteenth Amendment.  Before the district court dismissed her original suit, Heike filed a second action against CMU, alleging violations of Title VI of the 1964 Civil Rights Act and Title IX of the Educational Amendments Act of 1972.  The district court dismissed Heike's second action as barred by the doctrine of claim preclusion.  Because Heike could (and should) have brought her Title VI and Title IX claims in her original suit, we affirm.

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

## I. BACKGROUND

### A. Factual Background

From 2002 to 2006, Heike was a stand-out basketball player at Michigan's Romeo High School. In 2005, CMU offered Heike an athletic scholarship, subject to conditional yearly renewal, for the 2006-07 academic year. Heike accepted the offer and, in September 2006, matriculated at CMU, where she played as a member of the women's basketball team for the next two seasons. After Heike's freshman season, CMU replaced Coach Kleinfelter, the head coach who had recruited her, with Coach Guevara. At the close of Heike's sophomore season, Guevara revoked her scholarship. Thereafter, Heike appealed Guevara's decision to the school, asserting that Guevara failed to provide a written explanation of her alleged athletic deficiencies and that, in revoking her scholarship, CMU treated her differently than other athletes of a different race and gender. Guevara responded by indicating that Heike did not have the skills necessary to compete at the Division I level. On June 11, 2008, the CMU Office of Scholarship and Financial Aid held an appeals hearing at Heike's request. The appeals committee promptly upheld Guevara's decision, and CMU sent Heike a letter confirming the decision in writing.

### B. Procedural Background

In February 2009, Heike filed a nine-count complaint in federal district court against CMU, Coach Guevara, CMU's athletic director, and CMU's assistant director of financial aid, alleging that Guevara revoked her scholarship either because Heike was white or because she was heterosexual. The defendants moved to dismiss Heike's claims as barred by Eleventh Amendment sovereign immunity. The defendants also averred that Heike failed to state a claim upon which relief could be granted because neither CMU nor its officials were "persons" within the meaning of 42 U.S.C. § 1983.

On September 2, 2009, the district court granted in part the defendants' motion to dismiss Heike's complaint. The court dismissed all of Heike's claims against CMU on the basis of sovereign immunity. The court then explained that "[e]ven if sovereign immunity had been waived, CMU and the individual Defendants in their official capacities would not be amenable to suit for monetary damages under § 1983 because they are not 'persons' within the meaning of the statute." *Heike v. Guevara* (*Heike I*), 654 F. Supp. 2d 658, 672 (E.D. Mich. 2009). After discussing Heike's supplemental breach-of-contract and tort claims and directing the parties to submit additional briefing as to Heike's negligent-hiring and negligent-supervision claims, the court ordered that "all of [Heike's] claims against Defendant Central Michigan University Board of Trustees are dismissed on the basis of sovereign immunity." *Id.* at 677. Additionally, the court dismissed all of Heike's claims against the named CMU officials in their official capacities except to the extent that she sought prospective injunctive relief. *Id.*

On May 3, 2010, the district court granted the remaining defendants' motion for summary judgment on Heike's § 1983 claims to the extent those claims sought prospective injunctive relief "against the Defendants in their individual capacities and in their official capacities." The court then declined to exercise its supplemental jurisdiction over Heike's remaining state-law claims. *See* 28 U.S.C. § 1367(c). Accordingly, the court dismissed Heike's first lawsuit in its entirety.

While her first suit against CMU was still pending, but after the district court had dismissed the university from the action on the basis of sovereign immunity, Heike filed a second action against the university, alleging violations of Title VI of the 1964 Civil Rights Act, Title IX of the Educational Amendments Act of 1972, and the Equal Protection Clause of the Fourteenth Amendment. It is from the dismissal of this second action that Heike now appeals.

In response to Heike's second round of claims, CMU moved to dismiss her as a party to the action under Federal Rule of Civil Procedure 12(b)(6). Because CMU responded to Heike's complaint before filing its motion to dismiss, the court construed that motion as a Rule 12(c) motion for judgment on the pleadings. Therein, CMU asserted that Heike's claims were barred by the doctrines of claim and issue preclusion. Specifically, CMU argued that in *Heike I*, both the September 2, 2009 Order and the May 3, 2010 Order constituted final adjudications on the merits of claims involving the same parties or their privies, which resolved issues that were actually or should have been litigated.

In response, Heike argued that neither claim nor issue preclusion barred her suit. Specifically, Heike asserted that the dismissal of her claims against CMU on the basis of sovereign immunity in *Heike I* was not a final decision on the merits; that her second suit against CMU did not involve the same parties or their privies; that her second suit did not raise issues actually litigated or which should have been litigated in *Heike I*; and that there was no identity of claims. Heike further contested CMU's assertion that issue preclusion barred her suit as well.

The district court granted CMU's motion for judgment on the pleadings and dismissed all of Heike's claims with prejudice on the basis of claim preclusion. The court first found that both of its prior orders—the first dismissing Heike's claims on the basis of sovereign immunity under Rule 12(b)(1) and on the merits under Rule 12(b)(6), and the second granting summary judgment under Rule 56—served as final adjudications on the merits. The court then determined that the remaining three elements of claim preclusion were also satisfied—namely, that both suits involved the same parties or their privies; that Heike's second suit raised issues that should have been litigated in her first action because both suits arose from the same transaction and because Heike was not precluded in any way from asserting her Title VI and Title IX claims in her

original complaint; and that both suits shared an identity of claims because those claims stemmed from the same set of operative facts. However, because the legal standards governing Heike's Title VI and Title IX claims were not identical to those governing her claims in *Heike I*, the district court rejected CMU's alternate argument that collateral estoppel, or issue preclusion, separately barred her second action.

Heike timely appealed the dismissal of her second lawsuit against CMU.

## II. ANALYSIS

The purpose of claim preclusion "is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). After a careful review of the claims raised, the district court determined that claim preclusion barred Heike's second lawsuit in its entirety. We agree. The district court's May 3, 2010 Order granting summary judgment to the individual defendants in their official capacities satisfies every element of claim preclusion and therefore bars Heike's subsequent action against CMU.

We review de novo a district court's application of the doctrine of claim preclusion. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). We apply the same de novo standard of review to a Rule 12(c) motion for judgment on the pleadings. *D'Ambrosio v. Marino*, 747 F. 3d 378, 383 (6th Cir. 2014). When the judgment upon which a party relies to make its claim preclusion argument was issued by a federal court, "we look to federal law to determine its preclusive effect." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007); *see also* Restatement (Second) of Judgments § 87 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.").

"Under the doctrine of claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998) (brackets and internal quotation marks omitted). Claim preclusion applies when (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions. *Sanders Confectionery Prods., Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). Claim preclusion should not be confused with issue preclusion. "This latter doctrine only precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Id.* (brackets and internal quotation marks omitted). Because claim preclusion is an affirmative defense, CMU bears the burden of proving that the doctrine applies. *See Rivet*, 522 U.S. at 476; *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008).

## A. Final Adjudication on the Merits

Heike first argues that there was no final adjudication on the merits in *Heike I* with respect to CMU because the district court's September 2, 2009 Order dismissed CMU solely on the basis of sovereign immunity and a concordant lack of subject-matter jurisdiction. But as CMU correctly points out, Heike fails to meaningfully address the court's subsequent May 3, 2010 Order granting summary judgment to the remaining individual defendants in their official capacities. The grant of summary judgment most certainly constitutes a final adjudication on the merits for purposes of claim preclusion. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F. 2d 320,

325 (6th Cir. 1990). Thus, contrary to Heike's assertions, and irrespective of the court's September 2, 2009 Order dismissing CMU, in part, on the basis of sovereign immunity,[1] there was an independently sufficient final decision on the merits in *Heike I* upon which the district could base its claim-preclusion determination.

## B. Same Parties or Their Privies

A final judgment on the merits of an action bars the same parties "or their privies" from relitigating claims that were or could have been raised in that action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Here, CMU stood in privity with its coaches and administrators because Heike sued those individuals in their official capacities in *Heike I*.

Principles of claim preclusion "do not always require one to have been a party to a judgment in order to be bound by it." *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996). Rather, "there is an exception when . . . there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." *Id.* Our court recognizes that "[i]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see also* Moore's Federal Practice § 131.40[3][e][ii] (3d ed. 2014) ("A government official sued in his or her official capacity is considered to be in privity with the government."). After all, "an official-capacity suit is, in all respects other than name, to be

---

[1]The district court's September 2, 2009 dismissal order rested on alternative grounds, one of which was sovereign immunity. While it is true that where the basis of a dismissal is unclear, the jurisdictional ground controls and thus the dismissal does not preclude a future action, *see Remus Joint Venture and Envl. Disposal Sys., Inc. v. McNally*, 116 F. 3d 180, 184 n.5 (6th Cir. 1997); Restatement (First) of Judgments § 49 cmt. C (1949), it is not clear that a dismissal based on sovereign immunity is sufficiently jurisdictional for the purposes of claim preclusion. *Compare Touvell v. Ohio Dept. of Mental Retardation & Developmental Disabilities*, 422 F. 3d 392, 395 (6th Cir. 2005) ("The Eleventh Amendment provides a type of sovereign immunity, and deprives the federal courts of jurisdiction"), *with Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F. 3d 469, 474 (6th Cir. 2006) (recognizing that a defense based on sovereign immunity "is not coextensive with the limitations on judicial power in Article III."). Undoubtedly, this is a point of heavy contention for the parties. Nevertheless, because the district court cited a separate final adjudication on the merits as an additional, independently sufficient basis for its claim-preclusion determination, we need not decide whether a dismissal based on sovereign immunity is sufficiently jurisdictional in nature to bar the application of claim preclusion in a future action.

treated as a suit against the [governmental] entity. . . . for the real party in interest is the entity."

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). Accordingly, a prior judgment for an official in his or her official capacity will preclude a subsequent action on the same claim (or a claim that could have been brought in the first action) against the relevant governmental entity.

In the instant case, CMU's officials were awarded summary judgment in both their individual and official capacities. We therefore consider them privies of CMU for purposes of claim preclusion. Heike argues that CMU and its officials are not privies because, like CMU, CMU's officials were dismissed in their official capacities on jurisdictional grounds on September 2, 2009. Thus, Heike asserts, the district court's May 3, 2010 Order granted CMU's officials summary judgment only in their individual capacities. Unfortunately for Heike, she simply misstates the record on this point.

The district court dismissed Heike's claims against CMU's officials in their official capacities on the basis of sovereign immunity, "except to the extent that [Heike's] federal claims seek prospective injunctive relief." *Heike I*, 654 F. Supp. 2d at 663, 671. But the court allowed Heike's federal claims to proceed against the individual defendants in their official capacities to the extent that she sought prospective injunctive relief. *Id.* at 671. When the district court ultimately dismissed Heike's initial suit in its May 3, 2010 Order, the court explicitly stated that it was granting summary judgment to CMU's officials both "in their individual *and their official capacities*." Therefore, Heike's misrepresentations notwithstanding, the district court's May 3, 2010 Order granting summary judgment was indeed a judgment in favor of CMU's officials in their official capacities.

Moreover, it does not matter for purposes of claim preclusion that the district court granted summary judgment to CMU's officials in both their official *and* individual capacities. *See Pittman v. Mich. Corrs. Org.*, 123 F. App'x 637, 640 (6th Cir. 2005) (holding that claim preclusion barred a plaintiff's action because the individual defendants, "who were sued both in their official capacities and as individuals," stood in privity with the governmental entities). Any judgment for individual defendants in their official capacities will, in reality, be a judgment in favor of the entity for which those individuals serve. *See Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x. 621, 635 (6th Cir. 2012) (citing *Graham*, 473 U.S. at 165; *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 685, 690 n.55 (1978)). Thus, the district court's May 3, 2010 Order granting summary judgment to CMU's officials in their official capacities was a final adjudication on the merits with regard to CMU's privies.

## C. Issues Actually Litigated or Issues that Should Have Been Litigated

One purpose of claim preclusion is to compel litigants to bring all related claims in a single lawsuit. *Wilkins v. Jakeway*, 183 F.3d 528, 532 n.4 (6th Cir. 1999). Thus, the third element of claim preclusion not only prohibits parties from bringing claims they already have brought, but also from bringing those claims they *should* have brought. *Sanders*, 973 F.2d at 482. A plaintiff should have litigated two claims in his or her first suit, and thus may not litigate the second claim later, where, as here, the two claims "arose from the same transaction, or series of transactions." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006).

In *Rawe*, we determined that a plaintiff's first and second causes of action arose from the same transaction where the plaintiff's allegations of bad faith were based upon the defendant's conduct that predated the plaintiff's first suit. *Id.* There, the plaintiff brought suit for uninsured motorist benefits and then brought a subsequent action against her insurer for bad faith that

allegedly occurred both before and after her initial uninsured motorist claim was adjudicated. *Id.* In affirming the district court's dismissal of the plaintiff's bad-faith claims, we concluded that plaintiffs cannot avoid the effects of claim preclusion by merely repacking their grievances into alternative theories of recovery or by seeking different remedies. *Id.*

The factual and evidentiary nexus between Heike's first and second suits compels the same conclusion. Heike's initial § 1983 claims and her subsequent Title VI and Title IX claims all derive from her sophomore basketball season at CMU. The operative facts at the center of both suits are Heike's alleged mistreatment by the CMU coaching staff, her dismissal from the basketball team, and her subsequent loss of financial aid. All of these events pre-dated Heike's initial complaint. Moreover, as the district court correctly noted, Heike did not assert any new material facts in her second complaint. While Heike may have been dissuaded for any number of reasons from amending her initial complaint, she does not allege, nor does anything in the record indicate, that she was somehow prevented from raising her Title VI and Title IX claims in her original complaint. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258–59 (2009) (observing that plaintiffs may bring Title VI and Title IX claims alongside § 1983 claims in a single suit). Accordingly, Heike should have brought her Title VI and Title IX claims in her initial complaint alongside her § 1983 claims, and she cannot now avoid the effect of claim preclusion by simply asserting a different theory of recovery. *Rawe*, 462 F.3d. at 529.

## D. Identity of Claims

Lastly, to constitute a bar under the doctrine of claim preclusion, there must also be an "identity of the causes of action." *Westwood Chem. Co.*, 656 F.2d at 1227. Causes of action share an identity where the facts and events creating the right of action and the evidence necessary to sustain each claim are the same. *Sanders*, 973 F.2d at 484. In the words of the

Supreme Court, "[t]he now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action *depends on factual overlap*." *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1730 (2011) (emphasis added). "Two suits are for or [are] in respect to the same claim . . . if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id.* at 1731. Here, Heike's initial § 1983 claims share an identity to those asserted in her second lawsuit because all of her claims stem from the same set of operative facts. And to the extent that this test contains an *evidentiary* requirement, as Heike suggests, the question is not whether the two causes of action require the satisfaction of identical statutory elements, but rather whether the same underlying factual evidence could support and establish both the former and present causes of action. *Id.* at 1730 (citing 2. H. Black, Law of Judgments § 726, p. 866 (1891)).

As described, Heike's first and second lawsuits stem from the same factual predicate. Heike did not allege any new material facts in her second complaint. Had Heike brought her Title VI and IX claims alongside her § 1983 claims, she necessarily would have relied on the same evidence in support of those claims. It therefore is of no moment that the statutory elements of Titles VI and Title IX claims differ from those of an equal-protection or due-process claim raised under § 1983. Accordingly, there is no merit to Heike's assertion that the district court erred in finding an identity of claims between her first and second suits. Thus, the fourth and final element of claim preclusion is satisfied as well.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.