NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0004n.06

Case No. 23-3863

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 08, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| KENNETH L. ROBINSON, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| POSTMASTER GENERAL OF THE UNITED | ) | OHIO |
| STATES, | ) | |
| | ) | |
| Defendant-Appellee. | ) | OPINION |

BEFORE: MOORE, THAPAR, and DAVIS, Circuit Judges.

THAPAR, J., delivered the opinion of the court in which DAVIS, J., concurred. MOORE, J. (pp. 9–10), delivered a separate opinion concurring in the judgment.

THAPAR, Circuit Judge. Kenneth Robinson filed two lawsuits in federal court. Both asserted Title VII claims. The district court held that Robinson should have brought all his claims in the first lawsuit. Accordingly, the court dismissed the second lawsuit as barred by claim preclusion. We now affirm.

I.

Kenneth Robinson has worked for the United States Postal Service since 1993. On February 28, 2018, the Postal Service rejected Robinson's application for a job in Pittsburgh, Pennsylvania. Robinson claims that the denial of his application amounted to racial discrimination and retaliation for engaging in protected activity. So he sued in federal court, alleging violations

of Title VII of the Civil Rights Act of 1964. The district court dismissed the lawsuit as claim-precluded. The court held that Robinson could have, and should have, brought these claims as part of an earlier lawsuit that he filed in federal court. Robinson now appeals.

II.

"Claim preclusion prevents a party from litigating matters that should have been raised in an earlier case but were not." *Arangure v. Whitaker*, 911 F.3d 333, 337 (6th Cir. 2018). The doctrine exists to "protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (cleaned up) (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).

Federal law governs the preclusive effect of a federal-court judgment. *Id.* at 891. To establish that this lawsuit is claim-precluded, the Postmaster General must show that (1) an earlier case was litigated to a final judgment on the merits; (2) the earlier case involved the same parties as this suit; (3) the claims in the earlier case arose out of the same factual occurrence as the claims here; and (4) Robinson could have raised these claims in the earlier lawsuit. *Arangure*, 911 F.3d at 345.

At issue here is a previous Title VII complaint that Robinson filed in federal court on March 13, 2019 ("*Robinson I*"). The *Robinson I* complaint alleged (among other things) that Robinson "was denied more than 30 promotions" as part of a "continuing course of conduct based on discrimination and retaliation" that lasted from 2014 until "the present date." Compl. at Pg. ID 2–3, 6, *Robinson v. Brennen*, No. 1:19-cv-00559-CAB (N.D. Ohio Mar. 13, 2019), ECF No. 1. In discovery, Robinson submitted a spreadsheet listing the allegedly denied promotions that he had referenced in his complaint. On that spreadsheet, Robinson referenced the February 28, 2018,

denial of his application to the Pittsburgh position. That's the same act of alleged discrimination that forms the basis of the lawsuit before us now ("*Robinson II*").

The parties agree that the Postmaster General has satisfied the first two elements of claim preclusion. *Robinson I* was litigated to a final judgment on the merits, since the district court dismissed that action with prejudice in December 2021. And *Robinson I* involved the same parties as this lawsuit: Robinson and the Postmaster General. Accordingly, only the third and fourth elements of claim preclusion are at issue. We now turn to those elements.

A.

To satisfy the third element of claim preclusion, the Postmaster General must show that *Robinson I* arose out of "the same transaction or series of transactions" or "the same core of operative facts" as this action. *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 580 (6th Cir. 2008) (citation omitted). The test isn't whether the legal theories are identical. Rather, the question is "whether the same underlying factual evidence could support" both claims. *Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 483 (6th Cir. 2014) (citing *United States v. Tohono O'odham Nation*, 563 U.S. 307, 316 (2011)).

The same facts support the claims in *Robinson I* and *Robinson II*. To support his claim in *Robinson I*, Robinson relied on the allegedly wrongful denial of his application for the Pittsburgh position. That's the same factual occurrence that supports this lawsuit. In the *Robinson I* complaint, Robinson alleged that, as part of "a continuing course of conduct based on discrimination and retaliation, he was denied more than 30 promotions." Compl. at Pg. ID 6, *Robinson v. Brennen*, No. 1:19-cv-00559-CAB (N.D. Ohio Mar. 13, 2019), ECF No. 1. Then, as part of discovery in *Robinson I*, Robinson listed the Pittsburgh position on a spreadsheet identifying the promotions referenced in his complaint. The upshot? Robinson represented that

the "same underlying factual evidence" supporting this lawsuit—the denial of the Pittsburgh position—also supported *Robinson I*. *See Heike*, 573 F. App'x at 483. Both lawsuits thus arise out of the same core of operative facts.

In response, Robinson argues that he submitted the *Robinson I* spreadsheet "over the objection that the discovery sought" was "not relevant to the subject matter involved in the pending action." Appellant Br. at 32. But that's not a fair portrayal of Robinson's objection. In fact, Robinson submitted the spreadsheet (and other discovery materials) along with some "general objections" to the defendant's first set of discovery requests. R. 15-5, Pg. ID 1030. Robinson's discovery-response document stated that he objected to all the defendant's discovery "to the extent that it seeks an information [sic] that is not relevant to the subject matter involved in the pending action." *Id.* It also stated that Robinson submitted his discovery materials "without conceding the relevancy or materiality of the subject matter of any inquiry." *Id.* at Pg. ID 1031.

The record thus gives us no basis to conclude that Robinson "state[d] with specificity the grounds for objecting to the request" for the denied positions spreadsheet, as he was required to do. Fed. R. Civ. P. 34(b)(2)(B). Indeed, a party's "mere statement" that a request for production "is overly broad, burdensome, oppressive and irrelevant" is "not adequate to voice a successful objection." *Pough v. DeWine*, No. 2:21-CV-00880, 2024 WL 415490, at *3 (S.D. Ohio Feb. 5, 2024) (citation omitted); *see also, e.g.*, *Mediscribes, Inc. v. SkyScription, LLC*, No. 3:22-cv-00292-DJH-CHL, 2024 WL 3700208, at *6 (W.D. Ky. Aug. 7, 2024) (explaining that "general objections" like the ones Robinson submitted are "forbidden by the Federal Rules of Civil Procedure"); *Jones v. Wellpath, LLC*, No. 22-CV-00042-KKC-EBA, 2024 WL 2140216, at *4 (E.D. Ky. May 13, 2024) (explaining that "[b]oilerplate objections" like the ones Robinson submitted don't satisfy Rule 34(b)(2)(B)'s specificity requirement).

Even worse for Robinson, the discovery response does indeed mention the spreadsheet— but it does so to *emphasize* the spreadsheet's relevance to his claims, not to object to it. In the discovery response, Robinson stated that he "was denied advancement for at least 49 positions since 2014, as attached hereto in the spreadsheet." R. 15-5, Pg. ID 1033. He also stated that he had been "denied the advancement opportunity" for various positions, as reflected in the "spreadsheet provided." *Id.* at Pg. ID 1035. Thus, the discovery response reveals that Robinson has already litigated the denial of his Pittsburgh application in *Robinson I*. And that makes sense: The alleged discrimination from February 2018 (when he was denied the Pittsburgh position) was part and parcel of his 2019 claim that he "was denied more than 30 promotions" as part of a "continuing course" of discrimination from 2014 until "the present date." Compl. at Pg. ID 2, 6, *Robinson v. Brennen*, No. 1:19-cv-00559-CAB (N.D. Ohio Mar. 13, 2019), ECF No. 1.

Robinson also argues that his allegations about the denial of the Pittsburgh position weren't legally cognizable in the first proceeding because they hadn't gone through the Title VII exhaustion process. But that's a separate contention that we address in the next section. In any event, this argument concerns the legal viability of the allegation, not its factual underpinning. And for the third element of claim preclusion, the facts are what matters. Simply put, whether Robinson exhausted the administrative process for a Title VII claim about the Pittsburgh allegation doesn't remove that allegation from "the same transaction or series of transactions" or "the same core of operative facts" as the many other instances of discrimination alleged in *Robinson I*. *Winget*, 537 F.3d at 580 (citation omitted).

B.

Finally, the Postmaster General must show that Robinson could have brought these claims in *Robinson I*. Robinson says he couldn't have, pointing to Title VII's "rigorous administrative

exhaustion requirements." *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (citation omitted). Title VII's exhaustion provisions require a plaintiff to seek relief in an administrative process before coming to federal court.

So when did the claims in this lawsuit become ripe for filing in federal court? As relevant here, a federal employee like Robinson may bring a Title VII claim in federal court "[a]fter one hundred and eighty days from the filing" of an administrative complaint on which the EEOC takes no action. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(b). Because Robinson filed the EEOC complaint in *Robinson II* on September 24, 2018, and because the EEOC took no action within 180 days, he could have brought the *Robinson II* claims to federal court on March 23, 2019—180 days after he filed the administrative complaint. But Robinson filed *Robinson I* on March 13, 2019—only 170 days after he filed the administrative complaint in *Robinson II*. Because *Robinson I* was filed ten days before the 180-day exhaustion period for *Robinson II* expired, it might appear that Robinson was prevented, as a matter of law, from bringing the *Robinson II* claims in the first lawsuit.

But that math doesn't tell the whole story. Our court has held that the fourth element of claim preclusion is satisfied when a plaintiff can seek leave to amend his first lawsuit to include claims that ripen after the filing of the first lawsuit. *Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 856 (6th Cir. 1997).

In *Heyliger*, a black professor alleged workplace discrimination. *Id.* at 851. So he sued in Tennessee state court, alleging violations of the Tennessee Human Rights Act. *Id.* He also filed an administrative complaint with the EEOC, alleging violations of Title VII. *Id.* Years later, he lost on his Tennessee Human Rights Act claim in state court. *Id.* We held that this state court-judgment meant that Heyliger was claim-precluded from bringing his Title VII claims in federal

court. *Id.* at 856. It was true, we acknowledged, that Heyliger couldn't have filed the Title VII claims as part of his original state-court complaint because the exhaustion period hadn't yet expired. *Id.* at 855. But we explained that once Heyliger's Title VII claims *did* become ripe, he had an obligation to move for leave to amend his state-court complaint to assert the Title VII claims. *Id.* at 856. Why? Tennessee's law of claim preclusion prevented Heyliger from re-litigating a claim that he "reasonably could have . . . litigated" in the prior lawsuit. *Id.* Our court has since extended *Heyliger* to bar claims under the federal claim-preclusion standard. *Holder v. City of Cleveland*, 287 F. App'x 468, 470–71 (6th Cir. 2008) (relying on *Heyliger* in finding "no reason to believe" that a federal court in an earlier case "would have been unwilling to grant leave to amend" after the plaintiff received a right-to-sue letter); *cf. Nosse v. Potter*, No. 23-3256, 2023 WL 8788874, at *2, *4 (6th Cir. Dec. 19, 2023) (holding that a claim was precluded under Ohio law on the authority of *Heyliger*).

*Heyliger*'s rationale applies with even more force here. In *Heyliger*, our court simply *assumed* that the Tennessee state court *might* have granted leave to amend. 126 F.3d at 856. But in *Robinson I*, Mr. Robinson had an *automatic right* to amend his complaint to include the *Robinson II* claims that ripened on March 23, 2019. Robinson didn't serve his *Robinson I* complaint on the Postmaster General until September 17, 2019. And Federal Rule of Civil Procedure 15 gave Robinson a right to amend his complaint "as a matter of course" within "21 days after serving" that complaint. Fed. R. Civ. P. 15(a)(1)(A). Thus, Robinson could have easily amended his *Robinson I* complaint to include the claims he brought in *Robinson II*. Accordingly, the Postmaster General has satisfied the fourth element of claim preclusion.

Robinson does not resist the conclusion that his claim is precluded on the authority of *Heyliger*. Although the Postmaster General relies on that case in his brief, Robinson did not

address the *Heyliger* argument in his opening brief or in his reply brief. Robinson thus does not provide us with any reason to doubt our application of that case to this one.

III.

Finally, Robinson argues that the Postmaster General forfeited his claim-preclusion defense by not raising it in the administrative proceeding before the EEOC. Therefore, says Robinson, the district court wrongly dismissed the action as precluded. But we won't address the merits of Robinson's argument because Robinson forfeited the argument by not raising it to the district court. *See, e.g.*, *Greco v. Livingston County*, 774 F.3d 1061, 1064 (6th Cir. 2014). Robinson doesn't dispute that "the issue was not raised in the Court below." Reply Br. at 8. Thus, he has forfeited this argument.

*     *     *

We affirm the district court's dismissal of this lawsuit on the ground of claim preclusion.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** I would hold that Robinson's instant claim is barred by claim preclusion because he actually litigated the same claim in his prior lawsuit.

Under the doctrine of claim preclusion, "[i]f a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).

For purposes of claim preclusion, a claim should have been litigated in a previous action when it arises out of the same "transaction or series of connected transactions" as the prior claim, *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 215 (6th Cir. 1996) (quoting Restatement (Second) of Judgments § 24 (1982)), and where there is "an identity of the facts creating the right of action and of the evidence necessary to sustain each action," *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981).

In the suit before us (*Robinson II*), Robinson alleges that his employer, the United States Postal Service ("USPS"), retaliated against him for protected activity and discriminated against him on the basis of his race by denying him promotion to a managerial position in Pittsburgh ("the Pittsburgh position") on February 28, 2018. *Robinson II* R. 1 (Compl. ¶¶ 4–5, 11, 18–19) (Page ID #2–3, 4). In Robinson's prior lawsuit—*Robinson v. Brennen*, No. 1:19-cv-00559 (*Robinson I*)—Robinson alleged that, inter alia, "[s]ince in or about March 2014, Plaintiff suffered a continuing course of conduct in his employment at the USPS that created a hostile environment based on his race and in retaliation for his protected activity" and that this conduct "continued

through the present date." *Robinson I* R. 1 (Compl. ¶¶ 11, 14–15) (Page ID #2–3). "Specifically," Robinson alleged, "as a continuing course of conduct based on discrimination and retaliation, [Robinson] was denied more than 30 promotions." *Id.* ¶ 27 (Page ID #6).

Robinson not only could have, but did in fact, litigate his Pittsburgh-position claim in *Robinson I.* The *Robinson I* complaint alleged a continuing course of conduct of retaliatory nonselection and discrimination continuing through March 2019. *Robinson I* R. 1 (Compl. ¶¶ 11, 14–15, 27) (Page ID #2–3, 6). And, according to Robinson's evidence in *Robinson I*, his 2018 nonselection for the Pittsburgh position was one such instance, forming part of the same continuing course of conduct. *Robinson II* R. 15-5 (Pl. Disc. Resp. at 3–4) (Page ID #1032–33); R. 13-3 (Spreadsheet at 5) (Page ID #65); R. 13-4 (Dep. Tr. at 106–07, 110) (Page ID #171–72, 175). Were that not enough, it is clear that there is identity between Robinson's instant claims and those presented in *Robinson I* because there is overlap in the "evidence necessary to sustain each action." *Westwood Chem.*, 656 F.2d at 1227. Evidence of Robinson's retaliatory or discriminatory nonselection for the Pittsburgh position, if credited, would support both *Robinson I* and *Robinson II.* Robinson's Pittsburgh-position claim is therefore barred.

Accordingly, I concur in this court's judgment affirming dismissal.